3 RIVERS TELEPHONE
COOPERATIVE, INC.,
et al., Plaintiff,

v.

U.S. WEST COMMUNICATIONS,
INC., Defendant.

No. CV–99–080–GF–RFC.

United States District Court,
D. Montana,
Great Falls Division.

Dec. 11, 2000.

William A. Squires, Attorney at Law, Helena, MT, for 3 Rivers Telephone Cooperative, Inc., Lange Telephone Cooperative, Inc., Blackfoot Telephone Cooperative, Inc., Northern Telephone Cooperative, Inc., Interbel Telephone Cooperative, Inc., Clark Fork Telecommunications, Inc., Lincoln Telephone Company, Ronan Telephone Company, Hot Springs Telephone Company.

John L. Alke, Hughes, Kellner, Sullivan & Alke, Helena, MT, for U.S. West Communications, Inc.

## ORDER

CEBULL, United States Magistrate Judge.

Plaintiffs are nine independent telephone companies who allege that Defendant U.S. WEST has wrongfully withheld payments for the completion of long distance calls in areas served by the Plaintiffs' telephone networks. The Scheduling Order of this Court allowed for a motion for summary judgment by the Defendant. The motion was fully briefed by the parties and oral argument was held on the motion. The Court is now prepared to rule.

Following the divestiture of the Bell system in 1984, U.S. WEST became one of seven Regional Bell Operating Companies which not only served as telephone cus-

tomers' local exchange provider, but also was allowed to provide "local" long distance service, i.e., long distance service within the same Local Access and Transport Area (so-called intra-LATA service).[1]

Twenty independent companies, including Plaintiffs, also serve areas in Montana as local exchange companies. At the time of divestiture, U.S. WEST provided local long distance service for sixteen of the independent companies' subscribers as the designated carrier for intra-LATA calls since most of the independent local exchange companies were not then providing that service. Since then, the communications landscape has dramatically changed. Many local exchange companies, including most of the Plaintiffs, have replaced U.S. WEST as their designated intra-LATA long distance service carrier. Several even provide their own intra-LATA and inter-LATA service to their customers. Moreover, there has been a marked increase in the number of wireless carriers over the period.[2]

It is undisputed that when a telephone company is the designated carrier of long distance, it pays an access charge to the local exchange company in which the call originates as well as the local exchange company where the call terminates. These two charges are known as "originating access charge" and "terminating access charge," respectively. The long distance carrier pays both charges since it is receiving revenue from the long distance subscriber in the form of billed charges for a call that could neither be initiated nor completed without the presence of, or access to, the local exchange company's telephone network.

Following divesture of the Bell system, U.S. WEST, as the designated intra-LATA carrier, paid the local exchange companies access charges in accordance with the justification given above. However, since the enactment of the Federal Telecommunications Act of 1996, designed to promote competition in the telecommunications industry, U.S. WEST's dominance as the intra-LATA carrier for the independent local exchange companies has waned considerably. Plaintiffs do not dispute U.S. WEST's contention that it now only serves as the designated intra-LATA carrier for four of the twenty local exchange companies in Montana. In December of 1998, U.S. WEST notified Plaintiffs that henceforth it would pay the terminating access charges only for those calls originating with U.S. WEST customers or those local exchange companies who had retained U.S. WEST as their designated intra-LATA long distance carrier. Thus, Plaintiffs filed the present action alleging breach of contract, unjust enrichment, estoppel, and breach of the covenant of good faith and fair dealing.

As previously mentioned, there has been a decided increase in intra-LATA communication by cellular phone. Significantly, no local exchange company, including U.S. WEST or the plaintiffs, may levy access charges against wireless carriers by Order of the Federal Communications Commission. *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 and Interconnection between Local Exchange Carriers and Commercial Mobile Radio Service Providers,* FCC Docket 96–325 ¶ 1036.

The heart of this dispute is that the telephone networks of U.S. WEST and the independent local exchange companies create interconnecting facilities over which a wide array of communication traffic travels—including inter-LATA, intra-LATA, and wireless communication. This com-

---

1. US WEST is prohibited from providing long distance service between separate Local Access and Transport Areas (so-called inter-LATA service).

2. As discussed further herein, the growth of wireless traffic and the regulations governing the levying of charges by local exchange companies on such traffic limit the issue of which long distance traffic is subject to access charges.

mon trunk access is known as Feature Group C, and effectively results in a co-mingling of traffic regardless of the call's origin or the caller's choice of long distance carrier. The result is that four different types of communication traverse the system as follows:

1) calls from U.S. WEST users to other U.S. WEST users;

2) calls from U.S. WEST users that terminate at independent local exchange companies such as Plaintiffs;

3) wireless calls that terminate at independent local exchange companies such as Plaintiffs; and

4) calls that originate from an independent local exchange company and terminate at another local exchange company.

Types one and two are not at issue here. In example # 1, the Court understands that the payment of access charges amounts to a transfer within divisions of U.S. WEST. As for example # 2, Plaintiffs' counsel conceded at oral argument that calls originating with U.S. WEST and terminating at an independent company are not at issue since U.S. WEST continues to pay termination access charges based upon its Total Usage Tracking (TUT) report.

■ The third type of call, from a wireless carrier to an independent local exchange company, is troubling for two reasons. First, as stated previously, the FCC has ruled that local exchange companies may not collect terminating access charges from wireless carriers.[3] Second, wireless calls may account for much of the traffic for which Plaintiffs are seeking terminating access charges from U.S. WEST. Plaintiffs conceded that point at oral argument, Mr. Squires stating that "I would agree that a large amount of those numbers (minutes of calls traversing U.S. WEST's wires) probably are wireless. I can't and wouldn't dispute that." US WEST certainly is not obligated to pay

terminating access charges to Plaintiffs for those minutes.

■ That leaves us with calls from one independent local exchange company to another for which U.S. WEST is not the end-user's designated intra-LATA long distance provider.

From the briefs and oral argument, the Court concludes that the accepted practice provides that the company liable for the terminating access charge is the company liable for the originating access charge—the company entitled to bill the end user for long distance calls. Plaintiffs conceded as much in their brief and at the hearing on the motion for summary judgment. However, Plaintiffs nevertheless argue that by "accepting" the traffic over their network, thereby "elect(ing) to treat all such traffic as its own," U.S. WEST is liable for the terminating access charges "having received the benefit of those transactions." But where is the benefit? If U.S. WEST is not the end-user's long distance carrier and therefore lacks the ability to receive any compensation through billing for that call, no benefit accrues to U.S. WEST for which it should be asked to pay charges to an independent local exchange company. Moreover, Defendant advances the uncontroverted argument that the national mandatory interconnection policy *requires* that it accept the traffic from the independent local exchanges. A fair reading of 47 U.S.C. § 202, which makes unlawful any discrimination in "practices, . . . facilities, or services for or in connection with like communication service," supports Defendant's view.

Certainly, charges should be assessed and collected for originating and terminating intra-LATA telephone calls between independents, but to accept Plaintiffs' position results in the nonsensical proposition that U.S. WEST should be liable for payment of money owed by one plaintiff to another plaintiff simply because U.S.

---

**3.** An exception exists if the wireless call travels outside a so-called Major Trading Area, but that exception has no application in the case before the Court.

WEST is acting as a transport carrier. Moreover, the record before this Court suggests that Plaintiffs could correctly assess charges if they but shared their written records. Instead, they argue that U.S. WEST should switch to a different system (Feature Group D trunking) which would better segregate the traffic and spare the Plaintiffs the inconvenience of having to share their records with one another. Plaintiffs' argument in this regard is without effect since they admit that this Court lacks the authority to order such a system reconfiguration even if it was of a mind to do so. Moreover, this Court must conclude that the tariffs do not require Defendant to acquire Feature Group D for the Plaintiffs in this action.

Each independent local exchange company obviously knows who the designated intra-LATA carrier is for their subscribers through the Primary Interexchange Code (PIC). The independent local exchange companies such as Plaintiffs need only exchange their information in order for the correct entity responsible for the access charges to be identified. As such, Plaintiffs' appeal to the Telephone Exchange Carriers of Montana (TECOM) tariffs and reliance on the "filed rate doctrine" are irrelevant to the issue at hand. This action is not a dispute over rates—the thrust of the dispute addresses obligations, and U.S. WEST has no obligation to pay the access charges for other long distance carriers whose calls traverse U.S. WEST facilities.

Cut to its central issue, Plaintiffs argue that U.S. WEST should be obligated to pay terminating access charges even though it is not required to pay originating access charges since it is not the long distance carrier of choice for Plaintiffs' customers. Plaintiffs offer no controlling legal authority—not one case—that supports this novel proposition that the filed rate doctrine forms the basis for a breach of contract action. Given the record before the Court, Plaintiffs cannot prevail on any of their claims.

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). US WEST has met that burden, and Plaintiffs have failed to make a sufficient showing that there is a genuine issue for trial.

Wherefore, IT IS HEREBY ORDERED that:

1) defendant's motion for summary judgment (docket # 26) is GRANTED;

2) since U.S. WEST's counterclaim was preconditioned on a determination that U.S. WEST be found liable, the counterclaim is DISMISSED as moot;

3) the clerk is directed to enter judgment for the defendant by separate document, the parties to bear their own costs.